**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Frank BARNEY, Defendant-Appellant.**

**No. 15535.**

United States Court of Appeals
Seventh Circuit.

Nov. 30, 1966.

Rehearing Denied Jan. 3, 1967, en banc.

---

Joel Murray, Chicago, Ill., for appellant.

Edward V. Hanrahan, U. S. Atty., Jules Terrence Brunner, John Peter Lulinski, Chicago, Ill., for appellee.

Before HASTINGS, Chief Judge, and SWYGERT and CUMMINGS, Circuit Judges.

SWYGERT, Circuit Judge.

The defendant, Frank Barney, appeals from a judgment of conviction entered upon a jury verdict of guilty on all four counts of an indictment charging him with the unlawful possession and sale of heroin on August 26, 1964 and September 2, 1964, in violation of 21 U.S.C. § 174 and 26 U.S.C. § 4705(a). The defendant was sentenced to a term of eight years' imprisonment.

The defendant first challenges the sufficiency of the evidence. Taken in the light most favorable to the Government, the evidence discloses the following. On August 26, 1964, Donald Tucker, an agent for the Federal Bureau of Narcotics, met Charles Snell [1] and the latter's "source of supply," James Pendleton, to arrange for the purchase of a quantity of heroin by Tucker. The meeting was held one block from the defendant's residence on Chicago's south side. Later that day, a package containing heroin was transferred from Pendleton to Snell to agent Tucker.

On September 1, 1964, agent Tucker attempted to arrange another purchase through Snell. Snell spoke to Pendleton, who made two trips to the defendant's

---

1. Snell was named as a codefendant in the first three counts of the indictment.

residence. Later Pendleton told Tucker that his source was out of heroin, but permitted Tucker to speak to him on the telephone. Tucker subsequently identified the voice as that of the defendant. The defendant told Tucker that he, the defendant, was being watched, but that Tucker's money was safe and that Tucker would be getting good quality heroin. On the following day Pendleton delivered a package containing heroin to Tucker.

Pendleton, Tucker, and the defendant had subsequent meetings at a junk yard owned by Pendleton and at the defendant's fish market. On one occasion the defendant told agent Tucker that he was having difficulty obtaining narcotics and didn't want to keep Tucker waiting as he had done "the last time." The defendant also referred to his earlier phone conversation with agent Tucker. Later, when the defendant was arrested, he stated that he thought he could "beat this case" because he had not passed any heroin directly to Tucker.

From these facts and the inferences to be drawn from them the jury could reasonably find the defendant guilty of the crimes charged in the indictment.

■ The defendant next contends that he was denied the right to the effective assistance of counsel because the district judge, following the defendant's request for court-appointed counsel, appointed an attorney who was reluctant to represent him and because the appointment was made only three hours before the trial commenced. The facts preceding the appointment of counsel are important in evaluating this contention. The defendant was called for arraignment on the morning of May 10, 1965. At that time he said that he was attempting to retain the services of attorney Ray Smith. Ray Smith appeared for the defendant later that day and the arraignment was held. The case was called for trial on June 11 and June 14 but was continued at the request of counsel for the codefendant Snell. The trial was similarly continued on June 16 due to the unavailability of Snell's attorney. On this occasion Ray Smith unsuccessfully moved to have the trial set over until the fall term.

The case was again called for trial on June 24, but neither defense counsel appeared. The defendant announced that he was discharging Ray Smith because he "didn't have his fee." On the following day Ray Smith requested that he be permitted to withdraw since the defendant had informed him that he had retained another attorney, Lawrence Smith, to take over his defense. The district judge warned the defendant of the imminence of trial but continued the matter until June 28. Lawrence Smith failed to appear on that day and a continuance was granted until June 30; Smith again failed to appear and the matter was continued to July 2. The defendant was again cautioned that his trial could not be postponed indefinitely until he managed to arrange financing for another lawyer.

On July 2, after a further discussion between the court and the defendant concerning the defendant's financial difficulties, Lawrence Smith appeared at the court's request. He stated that the defendant had contacted him two weeks earlier and promised him a retainer, but that nothing had come of it. He expressed a willingness to represent the defendant despite the latter's financial troubles and requested a September trial date. The court granted the request, noting that it would provide more than ample time for preparation.

When the case was next called for trial, on September 13, the Government requested a continuance. At the same time Lawrence Smith moved to withdraw as the defendant's attorney, stating that the defendant had requested him to do so. The defendant asserted his inability to compensate Smith. No ruling was made on the motion to withdraw and it remained pending through two further trial calls, on September 22 and September 27, at neither of which was Smith present.

Finally, on September 28, both the defendant and Lawrence Smith appeared. Smith renewed his motion to withdraw,

commenting upon the defendant's failure to arrange for compensation, his failure to contact Smith with regard to preparing his defense, and his apparent attempts to retain other counsel. The defendant stated that his only objection to Smith was that he could not afford to pay him. The court continued the motion for a short time to permit the defendant and Smith to discuss the matter.[2] When the hearing was resumed, at 11:00 a. m., the defendant made a request for court-appointed counsel because, as he said, Smith would not "have his heart in the defending of me without my giving him any money." The following colloquy then occurred:

The Court:

> Well, I have continued this matter on I don't know how many occasions on the basis that you told me that you were going to go out and get yourself an attorney, and I gave you the right to do it.

The Defendant: Yes, sir.

The Court:

> You have a perfectly competent attorney right there. He has already stated that, although he would prefer to be relieved here, that, as a part of his responsibility as a lawyer, he will take your case, and I am sure that he will give you whatever service you are entitled to without any question about it.

> \*     \*     \*     \*     \*     \*

Mr. Smith:

> Well, Your Honor, you have heard the defendant speak. That is exactly what he said to me, that he wanted a court-appointed attorney.

The Court:

> Well, if he would like to have a court-appointed attorney, I will appoint you at this moment.

Mr. Smith:

> Very well, Your Honor. I will say this, Your Honor: In all deference to him, and I want to be as candid as possible, I feel that, based on what he told me, that he does have a defense but he has not availed himself so that I could help him with it.

The Court: Well, now—

Mr. Smith:

> And I would say this: That I would ask the Court—I know that the Court has been very indulgent—

The Court:

> I am going to be indulgent to the point of excusing you gentlemen until 2:00 o'clock for this hearing.

The trial began at 2:00 p. m.

The defendant maintains that these facts demonstrate a mere technical compliance with the right to counsel. He infers that the proceedings prior to the appointment of Lawrence Smith by the court on September 28 should be considered only to show the defendant's inability to retain counsel. Then, assuming that the earlier proceedings should be viewed in this manner, the defendant argues that appointed counsel had inadequate time to prepare his defense, and further, that counsel had little enthusiasm for defending him.

The patience and consideration shown to the defendant by the trial court through more than a dozen trial calls may not be so lightly dismissed as the defendant suggests. The record shows that the defendant's right to counsel of his choice was jealously guarded and that the time afforded him to prepare his case was considerably more than adequate if he had chosen to avail himself of it. The defendant was permitted to retain Ray Smith. He knew that his case had been set for trial. Several continuances later he was permitted to substitute Lawrence

2. The judge, directing his remarks to attorney Smith, stated:
I am going to require you to at least stay in this matter until such time as we dispose of these pending motions, and then we will determine where we go from that point. You can discuss with your client what he wants to do here this morning; whether he wants to proceed with the trial and whether he wants— whether you want additional time.

Smith. After several more delays, Lawrence Smith successfully postponed the trial until after the court's summer recess. Still, the defendant made no effort to seek assistance in preparing his case. From all that appears, he attempted only to retain the services of yet another attorney. His present contention that his actions were dictated solely by financial considerations is belied by the record.

The defendant's request for court-appointed counsel must be considered in the light of his earlier actions. When so considered, the request was nothing more than an attempt to substitute attorneys on the day of the trial for the second time. The trial court's action in appointing Lawrence Smith and ordering the trial to proceed was clearly within the court's discretion under the circumstances. United States v. Cozzi, 354 F.2d 637 (7th Cir. 1965), cert. denied, 383 U.S. 911, 86 S.Ct. 896, 15 L.Ed.2d 666 (1966); Cleveland v. United States, 116 U.S.App.D.C. 188, 322 F.2d 401, cert. denied, 375 U.S. 884, 84 S.Ct. 157, 11 L.Ed.2d 114 (1963). "Absent justifiable basis therefor there is no constitutional right to make a new choice of counsel, with attendant necessity for a continuance * * *, at the time the trial is scheduled to commence." United States v. Cozzi, supra, 354 F.2d at 639. The defendant points to Lawrence Smith's failure to request a continuance as an indication of apathy on Smith's part. But counsel's failure to make such a request in this case may perhaps be better attributed to his knowledge of what had already occurred than to an unwillingness to fulfill his professional responsibility. In any event, the record contains no evidence to support such a charge.

■ The defendant contends that the right to remain silent afforded him by the fifth amendment and 18 U.S.C. § 3481 was violated when counsel for Snell twice attempted to call the defendant to the witness stand and later made prejudicial comments during his closing argument. After the close of the Government's case, out of the presence of the jury, counsel for Snell requested a short recess to confer with the defendant's counsel "concerning the appearance of witnesses." The request was granted. Immediately after the discussion between counsel, in the jury's presence, the following occurred:

Mr. Engelland:

At this time on behalf of my defendant, I would at this time like to call the Defendant Barney to the stand.

Mr. Smith: I object, your Honor.

The Court: The objection is sustained.

After the defendant Snell completed his testimony, his counsel again attempted to call the defendant to the stand. The same objection was made and was sustained by the court. Later, at various times during his closing argument to the jury, Snell's counsel made these comments:

Now, Mr. Snell didn't have to take the stand. He has been convicted of armed robbery; he had been, prior to that time. If I didn't put the man on the stand, you would never have heard that.

   *    *    *    *    *    *

My man took the stand. My man told you what happened. He didn't have to do it. But he did it. The Government could have cross-examined him more extensively had they so chosen. They did not.

   *    *    *    *    *    *

I submit to you that you don't have to deliberate very long on this case, as to Mr. Snell. And I don't know about Mr. Barney. Mr. Barney could be guilty of everything in the world and I care less.

The defendant's counsel did not object to these statements and made no motion for a mistrial. Ordinarily, that would preclude consideration of the matter on appeal. United States v. Wright, 309 F.2d 735 (7th Cir. 1962), cert. denied, 372 U.S. 929, 83 S.Ct. 873, 9 L.Ed.2d 733 (1963). The defendant, however, urges us to consider these comments in connection with the attempts to call him to the stand. He contends that the actions of the attorney for his codefendant,

taken together, amounted to prejudicial comments upon his failure to testify and constituted reversible error.

The defendant relies principally upon De Luna v. United States, 308 F.2d 140, 1 A.L.R.3d 969 (5th Cir. 1962). There the defenses interposed by the two defendants in a narcotics case were antagonistic. The defendant Gomez, who testified, claimed that he was innocently riding in an automobile with the defendant De Luna when the latter saw the police coming and tossed him a package (containing narcotics), telling him to throw it out the window. The police witnessed Gomez discarding the package. De Luna did not take the stand. His attorney argued that the police had been in a position to observe De Luna and did not see him do anything. He placed the entire blame upon Gomez. Counsel for Gomez, in his argument to the jury, directly contrasted the willingness of his client to take the stand with the unwillingness of De Luna to testify. He stated:

> Well, at least one man was honest enough and had courage enough to take the stand and subject himself to cross examination and tell you the whole story, and tell you that, "Yes, I first colored the story, but when I got back to my senses I told the truth, and that's the whole thing." You haven't heard a word from this man [De Luna].

De Luna's attorney made repeated objections to these and other comments of a similar nature and unsuccessfully moved for a mistrial.[3] The Fifth Circuit reversed De Luna's conviction. It held that the comments of Gomez' attorney were prejudicial and that the only way to protect both De Luna's right not to testify and Gomez' interest in advancing his own defense by drawing an unfavorable inference from De Luna's silence was to require separate trials. ▮ The situation here is markedly different. The position of both Snell and the defendant (through his attorney),

far from being antagonistic, was that they did not even know each other prior to the trial. The comments relied upon by the defendant as prejudicial to his right to remain silent were innocuous. They were not of such character that the jury would naturally infer them to have been directed against his silence. In several cases such as this, where no direct comments on a defendant's silence like those in De Luna or in Stewart v. United States, 366 U.S. 1, 81 S.Ct. 941, 6 L.Ed.2d 84 (1961), were made, where the actions of counsel for a codefendant or the prosecutor no more than incidentally "pointed up" a defendant's silence, no violation of constitutional rights was found. Marshall v. United States, 355 F.2d 999, 1011–1012 (9th Cir. 1966); United States v. Parness, 331 F.2d 703 (3d Cir.), petition for cert.' dismissed, Grimmett v. United States, 379 U.S. 801, 85 S.Ct. 10, 13 L.Ed.2d 20 (1964); United States v. Wright, supra. Nor do we think that the attempts to call the defendant to the stand add anything to the comments relied upon. They were not in themselves direct comments upon the defendant's failure to testify. They did no more than momentarily illuminate the obvious fact that the defendant did not choose to testify, and could have had no greater impact upon the jury than the direct statement by the defendant's counsel immediately thereafter that "The defendant does not take the stand. * * * He will stand mute." Further, the jury was instructed not to draw any inference against the defendant because of his failure to testify.

▮ As his final contention, the defendant questions the constitutionality of the Harrison Narcotics Act, 26 U.S.C. § 4705(a), as applied to heroin. He argues that since Congress has declared heroin to be contraband,[4] the drug can no longer be lawfully possessed or sold; therefore, he says, the Government derives no revenue from the sale of this drug and section 4705(a), upheld as a

---

3. Gomez had moved for severance from De Luna before trial. His motion was denied.

4. 18 U.S.C. § 1402.

regulatory tax statute in United States v. Doremus, 249 U.S. 86, 39 S.Ct. 214, 63 L.Ed. 493 (1919), can no longer be constitutionally sustained as bearing a reasonable relation to the taxing power conferred upon Congress. But we need not reach this issue. The defendant's constitutional attack is restricted to counts one and three of the indictment. Counts two and four, not challenged, were based upon 21 U.S.C. § 174, which carries the same penalty as 26 U.S.C. § 4705(a). A sentence entered in gross, if within the maximum penalty which may be imposed under each count, is considered to be a sentence for the same period on each count, with the sentences to run concurrently. Since a general eight-year sentence was imposed, and since it did not exceed the penalty prescribed under either 21 U.S.C. § 174 or 26 U.S.C. § 4705(a), the defendant's sentence may be upheld as to either of the counts not challenged. United States v. Williams, 271 F.2d 434 (7th Cir. 1959), cert. denied, 361 U.S. 961, 80 S.Ct. 589, 4 L.Ed.2d 543 (1960).

The judgment is affirmed.