UNITED STATES of America, Plaintiff,

v.

AMERICAN CYANAMID COMPANY, Defendant.

No. 60 Civ. 3857–CLB.

United States District Court, S. D. New York.

Feb. 25, 1977.

Stephen F. Sonnett, Stanley M. Gorinson, Mary K. Smith, Kevin R. Sullivan, Dept. of Justice, Antitrust Div., Washington D.C., for plaintiff.

George S. Leisure, Jr., Allan Freedman, P. Michael Anderson, Donovan, Leisure, Newton & Irvine, New York City, for defendant.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

The United States seeks an order pursuant to Rule 42(b), F.R.Crim.P., adjudging American Cyanamid Company ("Cyanamid") in criminal contempt for the willful violation of a Consent Decree, and the Final Judgment filed pursuant thereto on August 4, 1964, and of the Supplemental Order amending this Final Judgment, filed on May 27, 1969.

Cyanamid is alleged to have committed a criminal contempt by manufacturing and/or importing in excess of thirty million (30,000,000) pounds of melamine during a period when the production capacity of nonconspiratorial melamine producers had not increased by the required twenty-five million pounds, all in violation of the amended decree. Familiarity with all prior decisions in this case is assumed. The cause was tried before me on May 3 and 6, 1976. Defendant waived a jury.

At the close of the trial the Government moved to strike a great number of Cyanamid's exhibits which were introduced into evidence subject to the Government's motion. As a result, the trial record was left open pending a decision from this Court as to the admissibility of these exhibits. It was agreed that in the event any of the contested exhibits were admitted, the Government would be allowed, if it wished, the opportunity to rebut the material contained therein. If, however, all of the documents are excluded, then the trial record will be closed when this ruling is issued.

The Court is therefore constrained to decide the admissibility issue prior to and separately from its decision as to whether the guilt of the defendant has been proved beyond a reasonable doubt. Since Cyanamid offered its evidence in eight individual and distinct groups, it is reasonable to rule separately with respect to each group.

Group 1 of the exhibits offered by Cyanamid, consisting of correspondence between the Department of Justice and counsel for Cyanamid, was admitted into evidence without objection. We begin, therefore, with a consideration of Group 2.

The exhibits of Group 2 consist of trade press articles concerning activity in the melamine industry. Of the nine exhibits in this group, five were admitted without objection; the remaining four exhibits, however, were objected to on the ground of relevancy. Each of these four exhibits is a trade press article, written between 1966 and 1969, which reports on developments in the melamine industry. Specifically, Ex. 3 estimates the capacity of a new Premier melamine plant; Ex. 5 predicts the capacity of the new Ashland melamine plant; Ex. 9 describes the production capability of the new Melamine Chemicals, Inc. ("MCI") plant; and Ex. 195 is a trade report which, *inter alia,* contains a list of annual capacities of melamine producers. Premier, Ashland and MCI are each nonconspiratorial melamine producers within the meaning of the amended decree.

To determine whether these exhibits are relevant, we must first examine the proposition which is sought to be proved by their admission. Relevancy of an exhibit or testimony can only be determined in the context of the proposition which it seeks to prove. If a contested item tends to prove or disprove the matter under consideration, then it is relevant and admissible, unless its receipt is prohibited by the Federal Rules of Evidence or the Constitution. Expressed differently, if these contested items would have a tendency to make the existence of the fact to be proved more or less probable, then they are relevant.

In order to establish its charge of criminal contempt against Cyanamid, the Government must prove five items: (1) that the defendant had knowledge of the Final Judgment as amended issued pursuant to the Consent Decree; (2) that the defendant knowingly produced and/or imported over thirty million pounds of melamine in 1972;

(3) that the annual nonconspiratorial melamine production capacity in the United States did not increase by twenty-five million pounds from 1964 to 1972; (4) that the defendant knew that the annual nonconspiratorial production capacity had not increased by twenty-five million pounds; and (5) that the defendant knowingly and wilfully violated the terms of the Final Judgment as amended by producing and importing more than thirty million pounds of melamine in 1972. Since the first two items were proved by a stipulation of the parties, only the last three items remain to be proved.

■ Cyanamid's Group 2 exhibits are offered to demonstrate the production capacity figures assigned to nonconspiratorial melamine producers by the trade press. Since this information was published in the trade press, the Court may infer that Cyanamid had knowledge of these projected figures, which in turn is relevant concerning Cyanamid's contention that it did *not* wilfully violate the Final Judgment as amended. These exhibits, therefore, have relevance with respect to the question of intent.

The Government has challenged the relevance of these exhibits on the ground that they were published from four to six years prior to the date of Cyanamid's alleged offense. This challenge is rejected. Each of these items discusses the projected production capacities of the nonconspiratorial melamine producers. It is likely, therefore, that Cyanamid was aware of these figures

when it made its production plans for the future. In addition, the figures used in these articles arguably gave Cyanamid an insight into industry use of the words "production capacity." The definition or usage of these words is, of course, critical to this case since the term is used in both the Final Judgment and the Supplemental Order issued by this Court.[1] The Government's motion to strike is denied as to defendant's exhibits 3, 5, 9 and 195.

■ Group 3 of Cyanamid's exhibits consists of correspondence between Cyanamid and other melamine producers. Of the eight exhibits in this group, three are not objected to; the remaining five involve an exchange of correspondence in December 1972, in which Cyanamid attempts to reach an agreement with Premier (a nonconspiratorial melamine producer) whereby Cyanamid would agree to purchase any melamine which Premier produced, but was unable to sell due to its higher prices. Premier's excess inventory was, in fact, purchased by Cyanamid.

The Government has objected to the admission of these exhibits as irrelevant. Once again we must examine the proposition which Cyanamid is attempting to prove by this evidence. Cyanamid contends that this transaction was suggested by a government attorney at a meeting held at the Department of Justice in November 1972. Cyanamid made an offer of proof, at trial, which indicated that this suggestion was made in order to prevent any "harm" to

---

1. The Final Judgment, entered on August 4, 1964, enjoined Cyanamid from (Judgment, p. 8, Sec. V(A):

"(1) Expanding its *production capacity* in the United States for melamine beyond thirty (30) million pounds a year; and
(2) Producing in the United States in any calendar year from said date of disposition of Willow Island (November 1, 1964) more than thirty (30) million pounds of melamine. In computing such production in any year, the amount of Cyanamid's melamine imports in the preceding calendar year of melamine made by Cyanamid outside the United States shall be deemed to be a part of Cyanamid's production." (Emphasis ours)
Section 2 of the Supplemental Order dated May 27, 1969 provides:

"2. If Cyanamid constructs such melamine production facility and if, at the time said new facility goes on stream, melamine *production capacity* in the United States (other than melamine producing capacity of any co-conspirator and of Cyanamid) shall not have been increased by more than twenty-five (25) million pounds per year over the total of such capacity on November 1, 1964 said facility shall be operated in compliance with the provisions of subparagraph (2) of subsection (A) of Section V of the Final Judgment until November 1, 1974 or until such melamine *production capacity* shall have been so increased whichever shall be earlier." (Emphasis ours)

Premier as a result of Cyanamid's intended overproduction. The government attorney allegedly informed Cyanamid that if Premier were adequately protected against harm, then disputed provisions of the Final Judgment as amended, claimed by Cyanamid to be ambiguous, would be interpreted favorably and without further dispute.

Cyanamid offers these documents to demonstrate that its overproduction was not a wilful violation of the Final Judgment as amended. Because Cyanamid protected Premier against possible harm by purchasing its unsold inventory, Cyanamid expected that the Government would interpret the Final Judgment in a manner that would permit Cyanamid to produce more than thirty million pounds of melamine in 1972. Defendant contends that since the Government sanctioned Cyanamid's overproduction it cannot now claim that this overproduction was a wilful, criminal contempt of the terms of the Final Judgment as amended.

The Court grants the Government's motion to strike these five exhibits of Group 3 on two grounds. The meeting in which the Premier purchase was discussed was held in late November 1972. The actual correspondence was exchanged in December. At either of these dates Cyanamid had already produced or imported more than thirty million pounds of melamine. This transaction, therefore, sheds no light on the issue of Cyanamid's wilful and knowing violation of the terms of the Judgment.

■ In addition, assuming *arguendo,* that Cyanamid had not yet produced or imported the thirty million pounds of melamine by November 29, 1972, or that having done so, it could have extricated itself from a violation by exporting the excess to itself in Canada, or elsewhere, the representations of a single government attorney could not serve as a defense. *United States v. Schine,* 260 F.2d 552, 557 (2d Cir. 1958), *cert. denied* 358 U.S. 934, 79 S.Ct. 318, 3 L.Ed.2d 306 (1959). Therefore, the Government's

motion to strike is granted as to exhibits 77, 79, 80, 81 and 86.

■ We turn now to Group 4 of defendant's exhibits which consists of eleven of Cyanamid's internal memoranda. These exhibits are offered to prove Cyanamid's intent or state of mind with respect to the issue of knowing and wilful violation of the terms of the Final Judgment as amended. Since these exhibits demonstrate that Cyanamid had no single clear understanding of the term "production capacity," Cyanamid argues that this establishes its contention that it could not have wilfully violated the terms of the Final Judgment as amended.

In addition, several of these exhibits were written by an author who also wrote documents submitted in evidence by the Government. These are offered by Cyanamid to show that the author defined "production capacity" in one way and then again in another, contradictory fashion, expressing no consistent definition. In the Government exhibits, the author, Mr. Goddard, defined capacity in terms of production figures, whereas in Cyanamid's exhibits, capacity is defined in terms of design capacity.[2]

Those documents of Group 4 which do reveal Cyanamid's internal definition, or use of the term "capacity" are admissible since they do tend to shed light on the question of intent. I therefore deny the Government's motion to strike, on the ground of relevancy, defendant's exhibits 4, 6, 16, 22, 28, 55, 66 and 83.

As to exhibits 54, 74 and 88 however, the Government's motion to strike is granted. None of these three exhibits lends any support to or disputes inconsistent ways, including design capacity and actual production. These exhibits are therefore irrelevant and must be excluded.

■ Since the exhibits of Group 5 were received without objection, we look now at the exhibits of Group 6, consisting of correspondence between the various melamine

---

**2.** I contrast defendant's exhibits of Group 4 primarily with Government exhibits 40, 42, 47, 52 and 65.

producers and the Department of Justice. This group contains seventeen documents of which two were received without objection. Cyanamid offers these exhibits as tending to establish the absence of any industry-wide definition of the term "production capacity." The majority of these exhibits are letters to the Justice Department, by melamine producers, in response to a Departmental inquiry as to the accepted industry use of the term "production capacity." Defendant contends these exhibits tend to prove that no industry-wide definition of the term "production capacity" existed in 1972.

The Government has objected to the receipt of these exhibits on the ground of hearsay and best evidence. If Cyanamid desired to prove the lack of an accepted industry definition of "production capacity," the Government argues, it could call its competitors' employees as witnesses and question them concerning their use of this term. The Government also objects to the admission of these exhibits on the ground of relevance.

The Government's objections are overruled and the motion to strike the exhibits of Group 6 is denied. I find that these exhibits do contain hearsay, but are admissible under Rule 803(24) of the Federal Rules of Evidence, 28 U.S.C. Rule 803(24), which is the catch-all exception to the hearsay rule. This exception is applicable when an exhibit contains hearsay and is not admissible under any of the specified exceptions to the Rule. Rule 803(24) provides that such evidence is admissible if it has equivalent circumstantial guarantees of trustworthiness (as required by all exceptions to the Rule), and if it meets four specified requirements:

"(A) the statement is offered as evidence of a material fact;

(B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and

(C) the general purpose of these rules and the interests of justice will best be served by the admission of the statement into evidence."

In addition, the proponent must give his adversary notice, sufficiently in advance of trial, of his intention to offer the evidence.

The exhibits of Group 6 meet the trustworthiness requirement since they are copies of letters written to the Department of Justice. These exhibits also meet the standards of relevancy in that they tend to prove or disprove a material factual proposition, namely, whether the defendant wilfully violated the terms of the Final Judgment as amended. Since these exhibits may tend to establish that there was no accepted industry-wide definition of the term "production capacity," they may lend weight to Cyanamid's denial of a *wilful* violation of the Final Judgment as amended. It would be unnecessarily expensive and time-consuming to call witnesses, from various remote places to come here to testify as to what they thought in 1972. The most accurate reflection of their thoughts in 1972 are their contemporaneous letters. Finally, the Government does not dispute the adequacy of notice as to Cyanamid's intention to offer these exhibits in evidence. See *United States v. Iaconetti,* 540 F.2d 574 (2d Cir. 1976).

Cyanamid's exhibits 94, 99, 106, 112, 116, 129, 130, 134, 138, 142, 145 and 146 are thus received in evidence, and the Government's motion to strike is denied with respect thereto. The Government's motion to strike with respect to exhibits 108, 143 and 147, however, is granted since these are found to be without relevance.

■■■ The Government argued at the trial, that the hearsay exception of Rule 803(24) was meant to apply only in exceptional cases. This argument is based on a reading of the Senate Judiciary Committee Report which limits the application of this section to exceptional cases.[3] Neither the

---

3. See Senate Report (Judiciary Committee) No. 93–1277, Oct. 11, 1974 [To accompany H.R. 5463]:

"The committee believes that there are certain exceptional circumstances where evi-

Rule, nor the cases in this Circuit interpreting the Rule, however, impose any express limitation concerning exceptional cases. To every criminal defendant, his own case is exceptional. Rule 803(24) establishes sufficient express criteria which must be satisfied before an item of hearsay will be admissible. Since the exhibits listed above conform to these criteria, they should be received. There is no requirement that the Court find a case to be "exceptional," whatever that means, in order to receive any evidence. To imply such a provision, as suggested by the Judicial Committee, *supra,* would negate the requirement of Rule 102, F.R.Evid. that "[t]hese rules shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined." And it would bring into each trial, the foot of the Chancellor, an historical enemy of our liberties.[4]

Cyanamid's Group 7 exhibits consist of seven Government memoranda of various conversations with people in the melamine industry in which the definition of "production capacity" was discussed. Cyanamid seeks to offer these exhibits for the same purpose as those offered in Group 6. The memoranda of the conversations indicate that industry personnel were unsure of the proper use of the term "production capacity." The Government objects to admissibility on the same grounds as it objected to the Group 6 documents, *i. e.,* relevance, hearsay and best evidence.

■ The Government's motion to strike is granted as to six of these seven exhibits, although not on the grounds suggested by the Government. I find that the material contained therein is repetitive and cumulative. In addition, two of these six exhibits have no relevance with respect to the issues raised at this trial (Exhibits 89 and 115).

■ The Government's motion to strike is denied, however, with respect to exhibit 137 of Group 7. This document is relevant and not cumulative since it may tend to establish that Government personnel had expressed the need to develop a standard or industry-wide definition of the term "capacity." This bears on intent. The Government's motion to strike is granted with respect to exhibits 89, 95, 96, 102, 113 and 115, and denied with respect to exhibit 137.

The five exhibits comprising Group 8 consist of Government memoranda and reports which relate to the melamine industry. These exhibits are offered to prove that employees of the Justice Department gave conflicting interpretation to the term "production capacity." If this is so, Cyanamid argues, the terms of the Final Judgment as amended are too vague to be enforced. Alternatively, adopting the interpretation of at least some Government employees, Cyanamid contends it believed that nonconspiratorial melamine production would increase

---

dence which is found by a court to have guarantees of trustworthiness equivalent to or exceeding the guarantees reflected by the presently listed exceptions, and to have a high degree of probativeness and necessity could properly be admissible.

\* \* \* \* \* \*

It is intended that the residual hearsay exceptions will be used very rarely, and only in exceptional circumstances. The committee does not intend to establish a broad license for trial judges to admit hearsay statements that do not fall within one of the other exceptions contained in rules 803 and 804(b).

\* \* \* \* \* \*

In order to establish a well-defined jurisprudence, the special facts and circumstances which, in the court's judgment, indicates that the statement has a sufficiently high degree of trustworthiness and necessity to justify its admission should be stated on the record. It is expected that the court will give the opposing party a full and adequate opportunity to contest the admission of any statement sought to be introduced under these subsections."

4. As long ago as 1818, Lord Chancellor Eldon wrote, in *Gee v. Pritchard,* 2 Swanston 414, that

"I cannot agree that the doctrines of this Court are to be changed with every succeeding Judge. Nothing would inflict on me greater pain in quitting this place, than the recollection that I had done anything to justify the reproach that the equity of this Court varies like the Chancellor's foot."

by 25 million pounds by 1972, thereby permitting Cyanamid to produce more than thirty million pounds of melamine in 1972. If Cyanamid mistakenly or negligently misinterpreted the Final Judgment as amended, as did certain Government officials, it suggests it could hardly be found criminally liable for a knowing and wilful violation of the Final Judgment as amended.

In order to make a determination regarding the admissibility of the exhibits of this Group, a brief description of each document is necessary. Exhibit 90 is an internal Justice Department memorandum of August 1963 evaluating the proposed Consent Decree. Exhibit 91 is a Department memorandum of February 1968 which notes that the present nonconspiratorial production capacity of melamine is 100 million pounds. Exhibit 100 is another internal memorandum which sets forth estimates of the production capacity of the various melamine producers. Exhibit 101 is a letter from John Satterfield, counsel to First Mississippi Corporation (later MCI) to a United States Senator, which complained of the Government's acquiescence to the Supplemental Order of 1969. Exhibit 131 is a Departmental memorandum of May 1972 which states that the present increase in nonconspiratorial production capacity amounts to 15 million pounds.

■ In response to the Government's objection to these exhibits on the ground of hearsay, Cyanamid claims admissibility pursuant to the business records exception, the public records and reports exception and the residual exception [803(24)] to the hearsay rule. The business-records exception of Rule 803(6) is simply not applicable to government records and reports, which are to be admitted in accordance with the standards of Rule 803(8). The government reports and records exception is similarly inapplicable to these exhibits in that they contain no "factual findings resulting from an investigation made pursuant to authority granted by law." 28 U.S.C. Rule 803(8). None of these internal memoranda (and certainly not the letter) contain any factual findings based on an investigation. That

leaves us with the residual hearsay exception of Rule 803.

■ I find that these memoranda are not admissible in that they are not relevant, as relevancy has been defined herein. Cyanamid offers these documents to demonstrate that Government officials had varying opinions on the meaning of the term "production capacity." I do not believe that these exhibits tend to prove this proposition in any respect. Exhibit 90, written before the Consent Decree was signed, weighs the impact of the proposed decree, but does not engage in interpreting the terms of the not yet filed Final Judgment. Exhibits 91 and 131 simply set forth current production capacity figures, reported by the Government, without explaining how they were reached. Exhibit 101, a letter from a melamine producer's counsel to a United States Senator, certainly has no bearing on the Government's definition of a term in the Final Judgment as amended. Exhibit 100, wherein the Government reveals that it is aware of both Cyanamid's and MCI's method of calculating "production capacity" also proves nothing. Defendant cannot use the internal reports of Justice Department attorneys, expressing the opinions of individual government employees, as admissions against the Government. *United States v. Santos,* 372 F.2d 177, 180 (2d Cir. 1967); *United States v. Keogh,* 271 F.Supp. 1002, 1008, n. 22 (S.D.N.Y.1967).

Since the documents of Group 8, Exhibits 90, 91, 100, 101 and 131 do not tend to prove a material fact they are irrelevant and therefore inadmissible. The Government's motion to strike is granted as to each of these exhibits.

As a result of this decision the following Cyanamid exhibits are received in evidence: 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 12, 16, 22, 27, 28, 31, 55, 59, 63, 66, 83, 94, 99, 106, 109, 112, 116, 129, 130, 134, 137, 138, 142, 145, 146, 157, 179, 180, 181, 186, 187, 188, 189, 190, 191, 192, 195, 197, 205 and 206.

The Government now has the right to reopen the trial record for the limited purpose of rebutting material contained in

868

those exhibits. Counsel for the Government will notify the Court by letter with a copy to defendant's attorneys, within fifteen (15) days from the date hereof, unless such time period is enlarged for good cause, advising whether the Government wishes to reopen the trial record. If so, the letter shall contain a brief statement in the nature of an offer of proof, setting forth what material is intended to be adduced, and for what purpose. Defendant shall have one week following receipt of the letter to make any response considered appropriate.

Nothing herein set forth, and no ruling made is to be regarded as suggesting any resolution by the Court of the factual or legal issues tried herein, nor should any statement of position or contention be misinterpreted as showing any tendency to accept or reject the position of either party with respect thereto.

Relevance and admissibility of evidence are to be tested without deciding the weight or significance of such evidence when received, or the validity of the theory upon which a party presents its case. Whether a theory of prosecution or defense being offered at trial has any validity, must be resolved after trial, upon a complete record.

So Ordered.