**Timothy Brian COLE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 1179–87.**

Court of Criminal Appeals of Texas, En Banc.

Nov. 14, 1990.

Rehearing Granted July 3, 1991.

Opinion on Motion for Rehearing Oct. 21, 1992.

Mike Brown, Lubbock, for appellant.

Travis S. Ware, Dist. Atty., Michael West, Asst. Dist. Atty., Lubbock, Robert Huttash, State's Atty., Matthew W. Paul and Carl E.F. Dally, Asst. State's Attys., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MILLER, Judge.

Appellant was convicted by a jury of aggravated sexual assault. See V.T.C.A., Penal Code, Section 22.021. The jury also assessed punishment at twenty-five years in the Texas Department of Corrections.[1] On direct appeal, the Seventh Court of Appeals affirmed appellant's conviction in a published opinion. *Cole v. State,* 735 S.W.2d 686 (Tex.App.—Amarillo 1987). We granted appellant's petition for discretionary review on the sole issue of whether the court of appeals erred in holding that the trial court correctly admitted hearsay evidence concerning the results of chemical tests performed by an absent Department of Public Safety chemist pursuant to Rule 803(6) of the Texas Rules of Criminal Evidence (TRCE), commonly known as the business records exception. We will reverse and remand.

---

1. The Texas Department of Corrections is now the Texas Department of Criminal Justice, Institutional Division.

Appellant was tried under the newly promulgated Texas Rules of Criminal Evidence, effective September 1, 1986. At trial, the State sought to introduce hearsay statements contained in a letter report and supplemental letter report from Warren R. Snyder, a chemist-toxicologist employed by the Texas Department of Public Safety in Lubbock. In the report, Snyder disclosed the results of tests conducted upon physical evidence collected at the medical examination of the sexual assault victim.[2] In the absence of Snyder, James Martin Thomas, the supervising chemist with the same DPS laboratory in Lubbock, was allowed to testify, over appellant's hearsay objection, as to the tests conducted and the results of the tests shown in the report. The State tendered the evidence under TRCE 803(6).[3]

In the court of appeals, appellant contended that the admission of this hearsay statement of Snyder through the testimony of Thomas was in contravention of that portion of TRCE 803(8)(B) which prohibits as hearsay "matters observed by police officers and other law enforcement personnel."[4] In support of his proposition, appellant relied primarily upon *United States v. Oates*, 560 F.2d 45 (2nd Cir.1977), which involved essentially the same facts as the instant case. The court of appeals conceded that

> [i]n [the *Oates*] opinion, the Court does indeed hold that similar testimony by one government chemist about the report of

another government chemist was within the purview of Federal Rule 803(8)(B) [and therefore inadmissible] which is identical in wording to our Rule 803(8)(B).[5]

*Cole*, 735 S.W.2d at 691. Although it acknowledged the considerable persuasive value of federal decisions construing rules of evidence, the court of appeals nevertheless affirmed appellant's conviction, emphasizing that TRCE 803(6) "is, in effect, a codification of former article 3737e of the Texas Revised Civil Statutes Annotated (Vernon Supp.1987), the 'Business Records Act.'" *Cole*, 735 S.W.2d at 691. Relying on cases interpreting the former act, *Kent v. State*, 374 S.W.2d 671 (Tex.Crim.App. 1963) and *Coulter v. State*, 494 S.W.2d 876 (Tex.Crim.App.1973), the court of appeals recognized that this type of testimony was formerly admissible. *Cole*, 735 S.W.2d at 691. The court further recognized that at the same time, each individual case must be reviewed to determine "whether the particular record is of such trustworthiness as to guarantee the same protection provided by the constitutional rights of confrontation." *Id.* In the court of appeals' opinion, "testimony such as that challenged here has long been admissible under the 'Business Records Act,' and, since Rule 803(6) is a codification of the Act," the court of appeals found it "consistent to hold that the tendered testimony fell within the ambit of Rule 803(6), and, ... [when] tendered with

**2.** The items submitted for testing were panties, warm-up pants, a warm-up top, a pair of socks, a bra, pubic hair clippings, pubic hair combings, vaginal wash, perineal wash, a swab, and smear slides. The record reflects that the requested analysis was to determine the presence of blood, seminal fluids, spermatozoa, and foreign hair. The record further reflects that although the tests were not conclusive, appellant was nevertheless not excluded from the percentage of the population that could have been a possible donor of the blood, etc.

**3.** Texas Rule 803(6) provides:

Rule 803. The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near

the time by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. 'Business' as used in this paragraph includes any and every kind of regular organized activity whether conducted for profit or not.

**4.** Appellant's hearsay objection at trial was based on this same ground.

**5.** The Second Circuit also held that the testimony was barred by Federal Rule of Evidence 803(6), which is also worded identically to our Texas rule. *United States v. Oates*, 560 F.2d 45, 71 (2nd Cir.1977).

the necessary indicia of trustworthiness," such hearsay evidence "is admissible." *Id.,* at 692. Thus, the court of appeals relied exclusively on former Texas law to interpret TRCE 803(6) and discounted federal law discussing FRE 803(6) and FRE 803(8) since the holding in *Oates* was based on perceived congressional intent in adopting FRE 803(6) and FRE 803(8). *Cole,* 735 S.W.2d at 691. We find this analysis incomplete.

■ To begin with, our Texas Rules of Criminal Evidence, and the Texas Rules of Civil Evidence for that matter, are patterned after the Federal Rules of Evidence, and cases interpreting federal rules should be consulted for guidance as to their scope and applicability unless the Texas rule clearly departs from its federal counterpart. C. Miller, *Texas Rules of Evidence: Article V. Privileges,* 16 VOICE FOR THE DEFENSE 40 (October 1986); S.H. Clinton, *Texas Rules of Evidence: Genesis and General Provisions,* 16 VOICE FOR THE DEFENSE 26 (October 1986); *Cole,* 735 S.W.2d at 691. See also *Campbell v. State,* 718 S.W.2d 712, 716 (Tex.Cr.App. 1986) and *Montgomery v. State,* 810 S.W.2d 372, note 2, Nos. 1090–88 and 1091–88, delivered May 30, 1990. While deference to precedent interpreting prior Texas evidence law is certainly preferable in developing a consistent body of rules, the Texas Rules of Criminal Evidence were promulgated with an awareness that the new Rules may, at times, overturn pre-

Rules decisions in the interest of establishing rules of evidence that would apply as similarly to federal courts as to Texas courts. 33 Goode, Wellborn & Sharlot, Texas Practice Guide to the Texas Rules of Evidence: Civil and Criminal (1988); Senate Interim Study Committee on Federal Rules of Evidence, Minutes of Meeting on March 19, 1982, p. 207.

Rule 803(8) of the Texas Rules of Criminal Evidence states:

Rule 803. The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(8) Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies setting forth

(A) the activities of the office or agency, or

(B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, matters observed by police officers and other law enforcement personnel, or

(C) against the state, factual findings resulting from an investigation made pursuant to authority granted by law;

unless the sources of information or other circumstances indicate lack of trustworthiness.

Rule 803(8) TEX.R.CRIM.EVID.[6] Since TRCE 803(8) is worded almost identically to

---

**6.** The hearsay exception embodied in these provisions existed at common law, see McCormick, Evidence § 315 (3d ed. 1984) and 1A Ray, Texas Law of Evidence § 1271 (3d ed. 1980), and Texas enacted a comprehensive official records statute in 1951. See Vernon's Ann.Civ.St. art. 3731a (Supp.1986) (repealed as to civil actions, effective Sept. 1, 1983; repealed as to criminal cases, effective Sept. 1, 1986). However, as noted by the Senate Interim Study Committee on Federal Rules of Evidence, the committee established to propose the set of evidence rules eventually promulgated by the judiciary, this provision was primarily an authentication provision, with hearsay aspects almost as an incidental matter. Senate Interim Study Committee on Federal Rules of Evidence, Minutes of Meeting on March 19, 1982, pp. 192–216. During the committee meetings, members expressed a concern that, under former article 3731a, it ap-

peared that once a document was properly authenticated as being what it purported to be, it was then considered admissible as to the truth of the matters contained therein. *Id.* The committee noted that this might lead to the untenable result that once any document prepared by a government employee was authenticated, it was admissible against a defendant in a criminal case, possibly in violation of his constitutional rights. *Id.* Although some members commented that such problems were usually addressed through judicial interpretation, in the interest of providing a set of rules with immediate usability and clarity within the language of the rules themselves, the committee voted to adopt the "federal" version of Rule 803(8) to address hearsay aspects of public or official documents, and left the authentication aspects to other provisions within the rules. *Id.*

its federal counterpart[7], a closer examination of federal decisions interpreting FRE 803(8) is warranted.

We agree with appellant that the Second Circuit case of *U.S. v. Oates*, 560 F.2d 45 (2nd Cir.1977), is particularly instructive in addressing the issue at bar since *Oates* involves a fact situation almost identical to the facts of the present case. In *Oates*, the defendant was charged with possession of heroin with intent to distribute. At his trial, the Government was permitted, over defendant's objection, to admit into evidence documentary exhibits purported to be the official report and accompanying worksheet of the United States Customs Service chemist who analyzed a white powdery substance seized from the defendant's companion. The documents were admitted through another Customs Service chemist due to the unavailability of the analyzing chemist. The Second Circuit held that the reports so admitted were not within the exception to the hearsay rule created by FRE 803(8), and, as such, were not admissible. *Oates*, 560 F.2d at 67. In reaching its decision, the *Oates* court conducted an exhaustive examination of the legislative history surrounding FRE 803(8) and found that it was the clear intention of Congress to make law enforcement and evaluative reports absolutely inadmissible against defendants in criminal cases when the authors of such reports were not available to testify due to the certain collision with the rights guaranteed to an accused by the confrontation clause of the Sixth Amendment. *Id.*

The court first determined that the documents failed to qualify for admissibility through FRE 803(8)(C) since the absent chemist's reports were undisputedly reports of "factual findings resulting from an investigation made pursuant to authority granted by law" which the government sought to have admitted against the accused in a criminal case. *Id.* Furthermore, the court ruled that FRE 803(8)(B) also barred admissibility, though it reached this conclusion "with less confidence" than when it reached the conclusion that the documents were inadmissible under FRE 803(8)(C). The court specifically stated:

> ... [T]he reports in this case conceivably could also be susceptible of the characterization that they are "reports ... setting forth ... (B) matters observed pursuant to duty imposed by law as to which there was a duty to report." If this characterization is justified, the difficult question would be whether the chemist making the observations could be regarded as "other law enforcement personnel." We think this phraseology must be read broadly enough to make its prohibitions against the use of government-generated reports in criminal cases coterminous with the analogous prohibitions contained in FRE 803(8)(C). [Citation omitted.] We would thus construe "other law enforcement personnel" to include, at the least, any officer or employee of a governmental agency which has law enforcement responsibilities. Applying such a standard to the case at bar, we easily conclude that full-time chemists of the United States Customs Service are "law enforcement personnel."

*Oates*, 560 F.2d at 67–68.

Other federal decisions have addressed the issue of what are considered "law enforcement personnel." In *United States v. Ruffin*, 575 F.2d 346 (2d Cir.1978), the Second Circuit court stated:

> [T]here surely can be no question here that IRS personnel who gather data and

---

7. Federal Rule 803(8) is worded as follows:
 Rule 803. The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
 (8) Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth
 (A) the activities of the office or agency, or
 (B) matters observed pursuant to duty imposed by law as to which there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or
 (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

information and commit that information to records which are routinely used in criminal prosecutions are performing what can legitimately be characterized as a law enforcement function.

*Ruffin,* 575 F.2d at 356. Compare, however, *United States v. Union Nacional de Trabajadores,* 576 F.2d 388 (1st Cir.1978), wherein the First Circuit stated:

> Appellants argue that Rule 803(8) excludes the return in this case since the United States Marshalls are "law enforcement personnel" and the return relates to "matters observed" by one of them in connection with a "criminal case." We find no merit in this argument. There is nothing to indicate that Congress meant to cut back upon the common law rule respecting sheriff's returns. A sheriff or marshall reporting the service of process is not reporting in the capacity of a police observer at the scene of a crime, nor is he ordinarily connected with the case in a law enforcement capacity.

*Union Nacional de Trabajadores,* 576 F.2d at 391. Finally, in *United States v. Hansen,* 583 F.2d 325 (7th Cir.1978), cert. denied 439 U.S. 912, 99 S.Ct. 283, 58 L.Ed.2d 259 (1978), the Seventh Circuit held:

> It was argued to the trial judge by Steven R. Hansen that the enforcement of the building code was a "quasi-criminal" procedure. It appears that failure to comply with the building code may result in a fine, but not in a criminal conviction. We do not believe we are justified in broadening the interpretation of the rules phrase "police officers and other law enforcement personnel" to include city building inspectors.

*Hansen,* 583 F.2d at 333.

■ Applying the *Oates* standard and the rationale in the preceding cases to the case at bar also leads us to the conclusion that full-time chemists of the Texas Department of Public Safety are "law enforcement personnel" within the meaning of TRCE 803(8)(B). The chemists, Snyder and Thomas, were employed by the Department of Public Safety, which is a governmental agency with law enforcement authority. Thomas, in fact, testified that he considered himself and Snyder "laboratory personnel with a law enforcement agency" or "law enforcement personnel." The items upon which the tests were conducted were collected by an investigator with the Lubbock County Criminal District Attorney's office and turned over to the chemists at the Department of Public Safety laboratory. While not all chemists may be so, the chemists in the present case were certainly important participants in the investigative and prosecutorial effort, for, as Thomas testified, as a forensic chemist, his job was to perform tests on "evidence that is admitted to our laboratory concerning a criminal investigation." Furthermore, as was the case in *Oates,* the role of the chemists in this instance did not terminate with the completion of the chemical analyses and submission of any resulting report, but participation continued until one chemist had testified as a crucial prosecution witness at trial. Cf. *Oates,* 560 F.2d at 68.

■ On this point, the State argues essentially that while the DPS chemists in this case may indeed be law enforcement personnel, the reports at issue are nevertheless not precluded as hearsay because "the exception to 803(8)(B) does not apply to law enforcement reports prepared in a routine, non-adversarial setting that record objective observations made as a part of the everyday function of the official or agency, and where there is no motivation on the part of the recording official to do other than mechanically register an unambiguous matter," citing *United States v. Quezada,* 754 F.2d 1190 (5th Cir.1985), rehearing denied 758 F.2d 651 (5th Cir.1985). In *Quezada,* the Fifth Circuit stated:

> [A] number of courts have drawn a distinction for purposes of Rule 803(8)(B) between law enforcement reports prepared in a routine, non-adversarial setting, and those resulting from the arguably more subjective endeavor of investigating a crime and evaluating the results of the investigation. See, e.g., *United States v. Orozco,* 590 F.2d 789, 793–94 (9th Cir.1979) (admitting computer rec-

ords of license plates on cars crossing the border due to non-adversarial setting in which information was gathered) cert. denied, 439 U.S. 1049, 99 S.Ct. 728, 58 L.Ed.2d 709 (1978); *United States v. Union Nacional de Trabajadores,* 576 F.2d 388, 390–91 (1st Cir.1978) (admitting reports on firearms serial numbers for Northern Ireland law enforcement agency on basis that they were records of a routine function).

Under this analysis, a warrant of deportation was deemed properly admissible in a § 1326 action in *United States v. Hernandez–Rojas,* 617 F.2d 533 (9th Cir. 1980), cert. denied, 449 U.S. 864, 101 S.Ct. 170, 66 L.Ed.2d 81 (1980). The Ninth Circuit there concluded that the notations on the warrant indicating the defendant's deportation were the result of ministerial, objective observation, and thus had none of the subjective features of reports made in a more adversarial setting, such as an investigation of a crime scene. *Id.,* at 535.

We find the reasoning of these cases persuasive. This circuit has recognized that Rule 803(8) is designed to permit the admission into evidence of public records prepared for purposes independent of specific litigation. *United States v. Stone,* 604 F.2d 922 (5th Cir.1979) (Rule 803(8)(A)). In the case of documents recording routine, objective observations, made as part of the everyday function of the preparing official or agency, the factors likely to cloud the perception of an official engaged in the more traditional law enforcement functions of observation and investigation of crime are simply not present. Due to the lack of any motivation on the part of the recording official to do other than mechanically register an unambiguous factual matter (here, appellant's departure from the country), such records are, like other public documents, inherently reliable. *See Smith v. Ithaca,* 612 F.2d 215, 222 (5th Cir.1980) (records trustworthy where recording official has no reason to be other than objective).

*Quezada,* 754 F.2d at 1194. Thus, some federal circuit courts would attempt to limit the exception in FRE 803(8)(B) to records or reports that are the result of the "more subjective" endeavor of investigating a crime and evaluating the results of that investigation. *Id.*[8]

We believe, however, in this case, like the reports of the Customs Service chemists in *Oates,* the reports of the chemists for the Texas Department of Public Safety

> [were] not "made by persons and for purposes unconnected with a criminal case [but rather they are a direct] result of ... test[s] made for the specific purpose of convicting a defendant[.]" ... It would therefore seem that if the chemist's report and worksheet here can be "matters observed," the documents would fail to satisfy the requirements of exception FRE 803(8) for the chemist must be included within the category of "other law enforcement personnel."

*Oates,* 560 F.2d at 68, citing *State v. Larochelle,* 112 N.H. 392, 400, 297 A.2d 223, 228 (1972) (dissenting opinion). The items upon which the tests were performed were collected as part of investigating a crime, and the reports prepared by the DPS chemist were unquestionably a product of evaluating the results of that investigation. Furthermore, and perhaps most importantly,

---

**8.** Other circuits essentially reach the same conclusion by suggesting that routine activities, not related to a specific investigation, are properly included within Rule 803(8)(A) as activities of the office or agency. See, e.g., *United States v. Hardin,* 710 F.2d 1231, 1237 (7th Cir.1983), cert. denied 464 U.S. 918, 104 S.Ct. 286, 78 L.Ed.2d 263 (1983) (graph from a DEA statistical report purporting to show the average retail price and purity of illicit cocaine in the United States offered by government to show defendant's intent to distribute cocaine held admissible under 803(8)(A) despite fact that data was compiled by DEA personnel pursuant to their "statutory mandate to extirpate the drug trade in the United States" since "[t]he compilation of such information for the nonlitigative purpose of identifying national trends in the illicit drug market provides little incentive for misrepresentation by these agents," and "the government's need and obligation to define its regulatory mission with accuracy clothe the report with inherent reliability, while its preparation for congressional review subjects it to public scrutiny for veracity.")

the reports were not prepared for purposes independent of specific litigation, nor were they ministerial, objective observations of an unambiguous factual nature. Therefore, we find that the letter reports in the present case fail to satisfy the requirements of TRCE 803(8)(B), since they constitute "matters observed" by "other law enforcement personnel," and are therefore inadmissible. Having reached this initial conclusion, we come to the more precise issue in this case, and that is whether hearsay evidence which does not qualify as an exception under TRCE 803(8) may nevertheless qualify under TRCE 803(6) as a business records exception, as the court of appeals held.

 This question was first considered in *Oates.* There, the court "discern[ed that it was] clear legislative intent not only to exclude such documents from the scope of FRE 803(8) but the scope of FRE 803(6) as well." *Oates,* 560 F.2d at 68. Relying on, *inter alia,* the dialogue exchanged during the debates among many of the key legislators involved in proposing the Federal Rules of Evidence, the *Oates* court reasoned that Congress intended, with FRE 803(8)(B) and (C), absolute inadmissibility of law enforcement and evaluative reports tendered in the absence of the makers of such reports. *Id.,* at 69. The court then concluded:

> ... [I]f the police and evaluative reports denied the benefit of qualifying under FRE 803(8)(B) and (C) were considered eligible for qualification under FRE 803(6), the so-called business records exception, or under any other exception to the hearsay rule ..., although they would not automatically be admissible, ... [such reports] would be one step closer to achieving admission, and would not be, contrary to [the legislature's] understanding, definitely "not admissible against defendants in criminal cases."

*Id.,* at 71.

The *Oates* court went on to say that while it may be argued that the documents satisfy the requirements of the business records exception, such an argument is viable only "if it is assessed strictly on the basis of the literal language of FRE 803(6) and without reference to either the legislative history or the language of FRE 803(8)(B) and (C)." *Id.,* at 74. Because the court recognized that its function as an interpretive body is to "construe legislative enactments in such a way that the intent of the legislature is carried out," it stated:

> ... [I]t was the belief of the Committee of Conference that under the new Federal Rules of Evidence the *effect* of FRE 803(8)(B) and (C) was to render law enforcement reports and evaluative reports inadmissible against defendants in criminal cases. It is thus clear that the only way to construe FRE 803(6) so that it is reconcilable with this intended effect is to interpret FRE 803(6) and the other hearsay exceptions in such a way that police and evaluative reports not satisfying the standards of FRE 803(8)(B) and (C) may not qualify for admission under FRE 803(6) or any of the other exceptions to the hearsay rule.

*Id.,* at 77 (emphasis original). Thus, the court first considering this issue unequivocally determined that Congress meant to exclude law enforcement and investigative reports against defendants in criminal cases whatever route around the hearsay rule was chosen. *Id.*

In *United States v. Cain,* 615 F.2d 380 (5th Cir.1980), the Fifth Circuit followed the Second Circuit and its reasoning in *Oates,* and expressly stated:

> For the reasons set forth in *Oates,* we conclude that statements inadmissible as public agency reports under Rule 803(8) may not be received merely because they satisfy Rule 803(6) and that section (6) does not open a back door for evidence excluded by section (8).

*Cain,* 615 F.2d at 382 (escape report made at the Federal Correctional Institute at Texarkana, Texas was improperly admitted against escapee). Furthermore, as appellant points out in his brief, other states have adopted the *Oates* reasoning in construing their state analogues to FRE 803(6) and (8), and have held that qualification as an exception on the basis of business rec-

ords should not be an alternative to the inability to qualify as a public records exception. See *Llewellyn v. State,* 630 S.W.2d 555 (Ark.Ct.App.1982) and *State v. Matulewicz,* 198 N.J.Super. 474, 487 A.2d 772 (App.Div.1985).

Further consideration of this issue by other federal courts, moreover, has led some circuits to apply a modified version of the *Oates* reasoning: the limitations of 803(8)(B) and (C) will not be extended to other hearsay exceptions if the maker is produced in court as a witness, subject to cross-examination, since the essential purpose of Congress was simply to avoid uncrossexamined evidence. See *United States v. King,* 613 F.2d 670 (7th Cir.1980) (restrictions of Rule 803(8) not applicable to Social Security investigative reports admitted as business records under Rule 803(6) where investigators testified); and *United States v. Coleman,* 203 U.S.App.D.C. 326, 631 F.2d 908 (1980) (narcotics case; not error to admit envelopes with notations identifying substance inside and note cards with descriptions and driver license data where all officers making notations testified).

Having determined that the Department of Public Safety chemist's reports are barred from admissibility via the exception in TRCE 803(8)(B) as matters observed by law enforcement personnel, we also believe it would be inconsistent with the intended effect of that rule to then allow such evidence to be admitted under TRCE 803(6) as a business record. We are not unaware that in so finding, we may overturn certain decisions interpreting the former Business Records Act, Tex.R.Civ.Stat.Ann., art. 3737e which we agree was intended to be codified by the new TRCE 803(6). However, those decisions were rendered without the need to simultaneously interpret and apply the newly-promulgated TRCE 803(8) which, by its plain language and by the application of decisions interpreting its federal analogue, would now prevent such records from being admitted under circumstances like those in the present case. Although this reading of TRCE 803(6) and (8) may broaden the limitations on qualifying business records, the codification of the Business Records Act in TRCE 803(6) and the introduction of the public records exception in 803(8) were promulgated with an awareness of the legislative intent and interpretive federal caselaw surrounding their federal counterparts. The Texas and federal versions of both rules have virtually the exact same wording, i.e., the Texas rules do not clearly depart from their federal counterparts. Therefore, "in light of applicable federal precedent" is the manner in which they were likely intended to be, and in this case are, construed. See S.H. Clinton, *Texas Rules of Evidence: Genesis and General Provisions,* 16 VOICE FOR THE DEFENSE 26 (October 1986).

In light of the foregoing, we hold that the absent chemist's reports in this case were matters observed by law enforcement personnel and were therefore inadmissible as an exception to the hearsay rule via TRCE 803(8)(B). We further hold that TRCE 803(6) should not have served as an alternative route for admissibility of these particular records otherwise barred by TRCE 803(8). Therefore, the admission of the reports in this case as business records under TRCE 803(6) was error.

We therefore reverse the judgment of the court of appeals and remand this cause to that court for a harm analysis pursuant to Tex.R.App.Pro. 81(b)(2).

WHITE, J., concurs in the result.

McCORMICK, P.J., and BERCHELMANN, J., dissent.

## OPINION ON STATE'S MOTION FOR REHEARING

PER CURIAM.

In our original opinion (see page 799), we addressed the "the sole issue of whether the court of appeals erred in holding that the trial court correctly admitted hearsay evidence concerning the results of chemical

tests performed by an absent Department of Public Safety chemist pursuant to Rule 803(6) of the Texas Rules of Criminal Evidence".[1] Based largely upon the Second Circuit's holding in *United States v. Oates,* 560 F.2d 45 (2nd Cir.1977), we held that the exclusionary provision contained in Texas Rule of Criminal Evidence 803(8)(B)[2], the public records exception to the hearsay rule, precluded admission of the laboratory reports under Rule 803(6).[3] The State filed a Motion for Rehearing[4], primarily asking that we reconsider our holding in light of widespread judicial and academic criticism leveled at the *Oates* decision. In this opinion, we will clarify portions of our original opinion in response to issues raised in the State's Motion for Rehearing.

1. At trial appellant objected to the admission of both the chemist's reports and the testimony of the supervising chemist concerning findings contained in the reports on the grounds of hearsay. The trial court admitted the reports and the supervising chemist's testimony over appellant's objections.

2. Specifically, we held, following *Oates,* that the exclusionary provision of 803(8)(B), together with the language of 803(8)(C), indicated a clear legislative intent for absolute inadmissibility of law enforcement and evaluative reports against defendants in a criminal case. Texas Rules of Criminal Evidence 803(8)(B) and (C) provide, in relevant part:
 Rule 803. The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
 **(8) Public records and reports.** Records, reports, statements, or data compilations, in any form, of public offices or agencies setting forth ... (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, *excluding, however, matters observed by police officers and other law enforcement personnel,* or (C) against the state, factual findings resulting from an investigation made pursuant to authority granted by law; unless the sources of information or other circumstances indicate a lack of trustworthiness.
 (emphasis added).

3. Texas Rule of Criminal Evidence 803(6) provides as follows:
 Rule 803. The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
 **(6) Records of regularly conducted activity.** A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near

## I.
### *Admissibility of the Reports Under Rule 803(8)(B)*

■ Before addressing the applicability of Rule 803(6), we initially concluded in our original opinion that the subject reports did not "satisfy the requirements of TRCE 803(8), since the reports were 'matters observed' by 'other law enforcement personnel' ". (See page 805). In its Motion for Rehearing, the State contends that DPS chemists are not "law enforcement personnel" within the meaning of Rule 803(8)(B). The State further asserts that the analysis and testing procedures conducted by chemists in a DPS laboratory are of an "unambiguous factual nature" and the reports are therefore not the type of documents intended to fall within the exclusionary provision of Rule 803(8)(B).[5] After careful

the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by affidavit that complies with Rule 902(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. "Business" as used in this paragraph includes any and every kind of regular organized activity whether conducted for profit or not.

4. Separate Motions for Rehearing were filed on behalf of the State by both the Criminal District Attorney of Lubbock County and the State Prosecuting Attorney. Both motions were granted. References in this opinion to the "Motion for Rehearing" refer to both motions collectively and references in this opinion to the "State" refer to the State, as represented by both the District Attorney and by the State Prosecuting Attorney.

5. The Second Circuit's opinion in *Oates* has been construed by some courts as holding that Rule 803(8)(B) excludes the admission of *all* law enforcement reports, not just certain types of reports. Some of the criticism directed at *Oates* has been based upon this construction of its holding. *Quezada,* 754 F.2d at 1193; *United States v. Hernandez–Rojas,* 617 F.2d 533, 535 (9th Cir.1980); *see also* JACK B. WEINSTEIN & MARGARET A. BERGER, 4 WEINSTEIN'S EVIDENCE, UNITED STATES RULES § 803(8)[04] (1991). We did not intend that our original opinion, nor do we intend that this opinion, be construed to hold that *all* law enforcement reports are inadmissible under Rule 803(8)(B).

examination of the State's grounds for rehearing in this regard, we conclude the issue was correctly decided in our original opinion. However, in light of the State's Motion for Rehearing, further clarification is called for on this issue.[6]

■ The State points to decisions of federal courts and other state courts which hold that certain types of documents are admissible because they are determined to be "routine, objective reports prepared by officials with no inherent motivation to distort the results."[7] While we acknowledge the existence of considerable authority holding that chemical analyses and certain laboratory tests and reports are routine and objective in nature and therefore admissible, we are not convinced of the same here. Additionally, the opinions of many courts that hold laboratory reports to be generally objective and routine in nature are often inadequate in their consideration of the adversarial and investigatory context out of which many such scientific reports arise. *See, e.g., Manocchio v. Moran,* 919 F.2d 770 (1st Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1695, 114 L.Ed.2d 89 (1991) (in finding autopsy re-

ports not excluded by Rule 803(8)(B), opinion devoid of factual discussion as to adversarial context in which report was prepared); *State v. Damon,* 214 Conn. 146, 570 A.2d 700 (1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 65, 112 L.Ed.2d 40 (in finding autopsy report admissible, no discussion of adversarial environment in which report prepared); *Howard v. United States,* 473 A.2d 835 (D.C.App.1984) (in finding report of DEA chemist admissible, no factual discussion of potential adversarial influences).

The State's assertion that the analyses here were "objective, routine, scientific determinations of an unambiguous factual nature" implies that the conducting chemist-toxicologist merely fed data into a computer and mechanically read a printout of definitive results, absent any element of human error or individual interpretation. Examination of the testimony of Jim Thomas, the supervising chemist who testified at appellant's trial, reveals that at least the hair analysis conducted here was remarkably subjective in nature as well as remarkably imprecise and subject to individual interpretation.[8] The following excerpts of

---

6. The State also argues that if the subject reports are not admissible under Rule 803(8)(B) and (C), then they are admissible under Rule 803(8)(A). We disagree. Texas Rule of Criminal Evidence 803(8)(A) provides that the hearsay rule will not exclude "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies setting forth (A) the activities of the office or agency". This rule has been construed to "allow admission of official records and reports prepared by an agency or government office *for purposes independent of specific litigation." United States v. Stone,* 604 F.2d 922, 925 (5th Cir.1979) (emphasis added). Clearly, the reports at issue were not made "for purposes independent of specific litigation".

7. Of the 16 cases cited by the State in support of this contention, seven do not address reports containing scientific analysis, but pertain to the admissibility of such documents as a United States Marshall's return of service, *United States v. Trabajadores,* 576 F.2d 388 (1st Cir.1978), an INS warrant of deportation, *United States v. Quezada,* 754 F.2d 1190 (5th Cir.1985), a pen packet, *United States v. Vidaure,* 861 F.2d 1337 (5th Cir.1988), *cert. denied,* 489 U.S. 1088, 109 S.Ct. 1551, 103 L.Ed.2d 854 (1989), a record of building code violations which was determined by the court not to have been prepared by "law enforcement personnel", *United States v. Han-*

*sen,* 583 F.2d 325 (7th Cir.1978), *cert. denied,* 439 U.S. 912, 99 S.Ct. 283, 58 L.Ed.2d 259, an INS immigration application, *United States v. Dominguez,* 835 F.2d 694 (7th Cir.1987), a computer record of cars reported stolen, *United States v. Enterline,* 894 F.2d 287 (8th Cir.1990) and a note on a fingerprint card as to where the print was lifted, *United States v. Gilbert,* 774 F.2d 962 (9th Cir.1985). Although the other cases cited by the State do address the admissibility of reports containing scientific test results and analysis and conclude that these documents are admissible, only two of the cases cited specifically address admissibility under Federal Rule of Evidence 803(8)(B) or a comparable state rule. *State v. Best,* 146 Ariz. 1, 703 P.2d 548 (Ct.App.1985); *State v. Huggins,* 659 P.2d 613 (Alaska App.1982).

8. The subject reports reflect the results of tests run to determine the presence of blood, seminal fluid, spermatozoa, and foreign hair and to determine blood type. Only the hair analysis process was described at trial. There was no testimony concerning the laboratory process used to determine the presence of blood, seminal fluid, spermatozoa or to determine blood type. We note that although other tests were run by the laboratory and were described by Thomas at trial, those tests were not specifically referred to in the reports.

Thomas' testimony are illustrative on this point.

When asked to describe what a forensic chemist does, Thomas testified that a forensic chemist analyzes data by making comparisons:

> A forensic chemist will take evidence that is admitted to our laboratory concerning a criminal investigation, this could be evidence such as trace evidence, like blood, or hair and fibers, glass, paint; we will take those samples, and usually it is a comparison with a known sample. *We will take one sample and compare it to the known sample.*

(emphasis added).

\* \* \* \* \* \*

Q. Let me ask you this, Mr. Thomas, in effect, what you did was put both these hairs under microscopes and look at them, didn't you?

A. We have a comparison microscope to where you can put one sample on one side and one on the other and you view them simultaneously side by side.

Q. So the purpose of the test is to eyeball and see if, in your opinion, they look alike?

A. The purpose of the test is to look at the characteristics of each hair side by side, and see if they are comparable, that's right.

Language used by Thomas in describing the process involved in conducting a hair analysis reveals the imprecise nature of that process:

> The hair comparison is more of a comparison of characteristics, and *you are just seeing if there are any exclusions*

to this having been the individual, or *whether it is still within the realm of possibility*, that hair being from an individual.

As far as hair samples are concerned, there are variations of the characteristics within one individual's head of hair. Sometimes those variations themselves are specific enough where you can make a more positive conclusion, but since *there are so many variations within one individual and between individuals*, you are—with hairs, you are just taking one sample and comparing it to another sample, seeing how the characteristics compare microscopically, and *seeing if it is within the realm of possibility that this hair could have been contributed by this individual*, or whether the characteristics are such that you can exclude the individual.

(emphasis added). We cannot conclude that the reports here were "objective, routine, scientific determinations of an unambiguous factual nature."

■ The subjective nature of the testing process is not the lone factor for consideration in determining the admissibility of a report under Rule 803(8)(B)'s exclusionary provision. Substantial attention should be given to the adversarial context in which the relevant tests were conducted.[9] *See U.S. v. Puente*, 826 F.2d 1415, 1418 (5th Cir.1987) (relevant inquiry is whether information was recorded as part of routine procedure in non-adversarial setting); *Orozco*, 590 F.2d at 793–94 (records of a routine, *nonadversarial* nature admissible where maker has no motive to fabricate). A DPS laboratory is a uniquely litigious

**9.** Attention to the adversarial context in which a document is generated is mindful of the *"Palmer* Doctrine", which maintains that reports prepared in contemplation of litigation are inherently unreliable due to the maker's bias and motivation to make misrepresentations and are therefore inadmissible. *Palmer v. Hoffman*, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943). Police and governmental investigatory reports have been excluded on the basis of the Palmer Doctrine. *See, e.g., Porter v. State*, 578 S.W.2d 742, 746–47 (Tex.Cr.App.1979), *cert. denied*, 456 U.S. 965, 102 S.Ct. 2046, 72 L.Ed.2d 491 (1982) (letters and reports maintained by federal parole officer regarding defendant were not ad-

missible as prepared in part with view toward revoking parole); *Battee v. State*, 543 S.W.2d 91, 92 (Tex.Cr.App.1976) (op. on reh'g) (evidence envelope which summarized the state's case against defendant was inadmissible under *Palmer* doctrine); *see also United States v. Bohrer*, 807 F.2d 159 (10th Cir.1986); *United States v. Smith*, 521 F.2d 957, 965–76 (D.C.1975); *United States v. Ware*, 247 F.2d 698, 700 (7th Cir.1957); *Hartzog v. United States*, 217 F.2d 706, 709–10 (4th Cir.1954); *see also* Vincent Alexander, *The Hearsay Exception for Public Records in Federal Criminal Trials*, 47 ALB.L.REV. 699, 711–12 (Spring 1983).

and prosecution-oriented environment. The subject reports appear on the letterhead of the "Department of Public Safety, Crime Laboratory Division", bearing the seal of the State of Texas to the right of the letterhead and a law enforcement insignia to the left. The "Prosecuting Attorney" was carbon copied on the reports and the reports close with the statement that "We are returning this evidence to the Lubbock Police Department property room", in an apparent effort to document the chain of custody. When asked to describe what a "forensic chemist" does, Thomas stated that "a forensic chemist will take evidence that is admitted to our laboratory *concerning a criminal investigation* ...". (emphasis added). We conclude that we were wholly correct in holding in our original opinion that:

> The items upon which the tests were performed were collected as part of investigating a crime, and the reports prepared by the DPS chemist were unquestionably a product of evaluating the results of that investigation. Furthermore, and perhaps most importantly, the reports were not prepared for purposes independent of specific litigation, nor were they ministerial, objective observations of an unambiguous factual nature. Therefore, we find that the letter reports in the instant case fail to satisfy the requirements of TRCE 803(8)(B), since they constitute "matters observed" by "other law enforcement personnel," and are therefore inadmissible.

## II.

### *Admissibility of the Reports Under Rule 803(6)*

■ The second issue addressed in our original opinion was "whether hearsay evidence which does not qualify as an exception under TRCE 803(8) may nevertheless qualify under TRCE 803(6) as a business records exception". *Cole,* slip op. at 10. We held that "it would be inconsistent with the intended effect of [Rule 803(8)(B) to] allow such evidence to be admitted under TRCE 803(6) as a business record." We conclude this issue was correctly decided in our original opinion, but write to clarify our original opinion and address issues raised in the State's Motion for Rehearing.

The State argues that a portion of the *Oates* opinion relied upon by this Court in our original opinion has since been retracted, points to considerable authority rejecting *Oates'* (and therefore our original opinion's) construction of Rules 803(6) and 803(8)(B), and asserts that our holding does not take into account all of the relevant legislative history.[10]

In its lengthy opinion in *Oates,* the Second Circuit concluded that Congress intended that reports failing to qualify as admissible under 803(8)(B) are also inadmissible under 803(6) "*or any of the other exceptions to the hearsay rule.*" *Oates,* 560 F.2d at 77 (emphasis added). This portion of the *Oates* opinion has been widely criticized for its over-reaching implications. Recognizing its own error, the Second Circuit stated in a later opinion that "it is obvious that not all of the hearsay exceptions provided by Rules 803 and 804 were at issue in *Oates*" and therefore "the *Oates* language [is] dictum to the extent that it encompassed Rule 803(10)". *United States v. Yakobov,* 712 F.2d 20, 26 (2nd Cir.1983). Although we favorably quoted some of the overly broad portions of the *Oates* opinion in our original opinion, we did not intend that our original opinion be construed to speak to admissibility of law enforcement

---

10. The State also argues that this Court's decision in *Crane v. State,* 786 S.W.2d 338 (Tex.Cr. App.1990), decided two months after our original opinion, is "in apparent conflict with" our original opinion. In *Crane,* we held that a cassette tape of a radio conversation between a police officer and a dispatcher and a transcript of the tape were admissible under Rule 803(6), as business records. *Id.* at 351–52. However, *Crane* is distinguishable from our holding on original submission because the tapes would not be excluded by Rule 803(8)(B) as they did not merely set forth the officer's subjective report of "matters observed" about a particular event, but amounted to a contemporaneous recording *of an event itself.* Moreover, we also held in *Crane* that the recording was not offered for the truth of the matter asserted, but to show the circumstances surrounding the offense, to establish that the officer was acting in lawful discharge of his duty and as res gestae statements. *Id.* at 352.

documents under hearsay exceptions *apart from* Rules 803(8) and 803(6). However, we conclude that our holding with respect to those Rules is correct. We have re-examined the relevant legislative history and remain convinced that it supports our holding on original submission that documents inadmissible under 803(8)(B) may not be admitted under 803(6).[11] However, we emphasize that our holding only pertains to the use of Rule 803(6) as a "back door" to evidence inadmissible under Rule 803(8)(B).[12]

The State claims that our conclusions based upon the legislative history are "plainly contradicted by clear language in that history to the contrary." In support of its assertion, the State points to the following statement, made during discussions of Rule *803(5)* and appearing in Senate and House Reports by the Committee on the Judiciary:

> a memorandum or report, although barred by this Rule, would nonetheless be admissible if it came within another hearsay exception ... This principle is deemed applicable to all hearsay rules.

This statement reiterates the general rule that evidence which is inadmissible under one hearsay exception may often be admissible under another exception. We are not persuaded that a general statement made during discussions on Rule 803(5), should be construed to override congressional intent evidenced by specific statements made during discussions which addressed Rule 803(8)(B), the very rule at issue here. While we acknowledge the existence of that general rule, many, if not most, general rules are vulnerable to numerous exceptions thereto and we cannot ignore clear legislative intent to recognize such an exception.

The State also claims that statements made during congressional discussions on Rule 803(8) indicate that the Rule's exclusionary provision was only intended to "prevent the admission of offense reports in place of the testimony of the officer concerning his observations at the scene of the crime or arrest." We disagree with so narrow an interpretation of this provision. Rather than exclude only "offense reports" pertaining to observations at the scene of the crime or arrest, the plain language of Rule 803(8)(B) is broad in scope, excluding reports that set forth matters observed by law enforcement personnel. Moreover, although several statements in the legislative history refer to "offense reports" and the "policeman on the beat," the Rule's broad language, read in light of the legislative history as a whole, leads to the conclusion that Congress' broader concern was with the potentially prejudicial influence of an adversarial setting and with a defendant's confrontation rights. Representative Hungate expressed this more general concern when presenting the Conference Report to the House for final consideration:

> Police reports, especially in criminal cases, tend to be one-sided and self-serv-

---

**11.** We note that this is consistent with the current position of the Fifth Circuit. In *United States v. Cain,* the Fifth Circuit expressly followed *Oates* and held that an escape report from a federal correctional institution was inadmissible under Rule 803(8) and that "section (6) does not open a back door for evidence excluded by section (8)". *United States v. Cain,* 615 F.2d 380, 382 (5th Cir.1980). Later, in *Quezada,* the Fifth Circuit allowed the admission of an INS warrant of deportation under Rule 803(8)(B). *Quezada,* 754 F.2d at 1193–94. In disapproving of the narrowness of the *Oates* decision, the Fifth Circuit noted that it had previously cited *Oates* with approval in *Cain,* but that it had only cited *Oates* for the proposition that a document which is inadmissible under 803(8)(B) may not be admissible because it satisfies 803(6). Thus, although the Fifth Circuit has disapproved of *Oates'* overly broad im-

plications, it nonetheless continues to follow *Oates* to the extent that *Oates* addressed the relationship between Rules 803(8)(B) and 803(6).

**12.** We stress that we did not in our original opinion, nor do we here, hold that evidence inadmissible under 803(8)(B) may not be admitted under *any* other hearsay exception. The State apparently misinterprets our holding in our original opinion to this extent, as evidenced by the State's contention that our holding "carried to its logical conclusion, leads to bizarre and far reaching results." The State argues that under our construction of Rule 803(8)(B), even a defendant's written confession would be inadmissible. This assertion indicates that the State interprets our holding on original submission far more broadly than it was intended.

ing. They are *frequently prepared for the use of prosecutors,* who use such reports in deciding whether to prosecute. (emphasis added) (speaking on Senate's proposal that would have allowed such reports to be admitted if the officer was unavailable for certain specified reasons). Often in cases involving physical evidence, a prosecutor's decision to prosecute depends upon the results of a laboratory report. Here, the State's decision to prosecute appellant very likely turned upon the results of the subject reports. Accordingly, we think our original opinion correctly decided that the laboratory reports were the type of reports intended by Congress to be excluded from evidence in the absence of the conducting chemist.[13]

Finally, the State argues that the facts in *Oates* concerning the reports and the nature of the testifying chemist are critically distinguishable from the instant case and also that the Second Circuit's opinion in *Reardon v. Manson,* 806 F.2d 39 (2nd Cir. 1986), *cert. denied,* 481 U.S. 1020, 107 S.Ct. 1903, 95 L.Ed.2d 509 (1987) is more factually controlling than *Oates.* The State points out that in *Oates* the chemist who testified did not know the chemist who conducted the tests and prepared the reports, nor had the testifying chemist ever seen the conducting chemist perform any chemical tests. The State also points to discrepancies in the reports in *Oates* which the testifying chemist was unable to explain.[14] The State argues that all of these factors, which were not present in the instant case, played an important role in the *Oates* court's decision to hold the documents inadmissible.

*Oates* addressed the admissibility of documentary evidence, specifically, reports of a United States Customs Service chemist. The appellant in *Oates* contended that the reports should have been excluded as hearsay and, alternatively, that admission of the reports was violative of the appellant's confrontation rights under the Sixth Amendment to the United States Constitution. *Oates,* 560 F.2d at 63. The court decided to base its decision upon statutory grounds rather than constitutional grounds, *id.* at 75, holding that the reports were hearsay and were not admissible as exceptions under Rules 803(8)(B) or 803(6). *Id.* at 65–84. In reaching this conclusion, the court acknowledged the existence of those factors, described above, that rendered the reports questionable, but ex-

---

**13.** In his dissenting opinion, Presiding Judge McCormick cites three pre-rules cases for the proposition that laboratory reports of the type at issue in the instant case were admissible under former article 3737e. A review of the three cases cited, however, reveals that the admissibility of documentary evidence was not at issue. In all three cases, the court addressed the admissibility of *testimony* based upon laboratory reports, not the admissibility of the reports. *Brooks v. State,* 642 S.W.2d 791 (Tex.Cr.App.1982) (toxicologist could testify about test results obtained by a subordinate); *Hodge v. State,* 631 S.W.2d 754 (Tex.Cr.App.1982) (chemist may testify based upon laboratory reports, citing *Kent*); *Kent v. State,* 374 S.W.2d 671 (Tex.Cr.App.1963) (holding chemist "may testify from records of the laboratory as to the results thereof"). The dissenting opinion also refers to cases cited within the *Kent* opinion. A review of the cases cited by the court in *Kent* reveals that all of those cases involved admissibility of testimony rather than admissibility of reports. However, we note that two of those decisions indicated in dicta that the reports would be admissible under former article 3737e as business records. *Leonard v. State,* 278 S.W.2d 313 (Tex.Cr.App.1955); *Jackson v. State,* 262 S.W.2d 499 (Tex.Cr.App.1953). We do not in this opinion assert that such reports were not admissible under the former Business Records Act. Prior to the promulgation of the Texas Rules of Criminal Evidence, there was no exclusion of police and law enforcement reports of any kind. *See Trussel v. State,* 585 S.W.2d 736, 739 (Tex.Cr.App.1979) (deputy's offense report was admissible as a business record under 3737e). Rule 803(8) now imposes such an exclusion. Rule 803(8)'s exclusionary provision does not "abridge, enlarge or modify the substantive right of a litigant." Rather, Rule 803(8) impacts a procedural right, that is, the ability of a party to introduce certain kinds of documentary evidence.

**14.** In *Oates,* the official typewritten report introduced at trial contained the conducting chemist's signature. However, a copy of that report given to the defense beforehand, did not contain a signature. Also, a notation pertaining to the chain of custody appeared on both the official report and on the chemist's worksheet. However, the notation on the official report had been crossed out, but was still legible. The testifying chemist was not able to account for these discrepancies.

pressly chose to assume that the reports *were* trustworthy and discounted any questionable factors in reaching its decision that the reports were inadmissible under 803(8) and therefore were also inadmissible under 803(6). *Id.* at 75. Accordingly, we reject the State's contention that the troubling characteristics concerning the report and the testifying chemist in *Oates* render our reliance on that case misplaced.[15]

The State further argues in its Motion for Rehearing that the Second Circuit's opinion in *Reardon v. Manson,* 806 F.2d 39 (2nd Cir.1986), *cert. denied,* 481 U.S. 1020, 107 S.Ct. 1903, 95 L.Ed.2d 509 (1987), implied that *Oates* would have been decided differently if the reports at issue had been admitted through the testimony of the laboratory supervisor. The State contends, therefore, that because the reports in the instant case were offered through the testimony of the supervising chemist, they were properly admitted at trial. We disagree with the State's assessment of *Reardon* and its alleged applicability to *Oates* or to the issue of documentary evidence in this case. *Reardon* addressed the admissibility of testimonial evidence, a chemist's drug-identification *testimony,* while *Oates* and our original opinion addressed admissibility of documentary evidence, a chemist's *reports.* The court in *Reardon* distinguished its facts from those in *Oates:*

> In the first place, *Oates* was not decided on constitutional grounds but on an interpretation of the Federal Rules of Evidence which are not at issue herein. In

the second place, *Oates* did not, as here, concern the admission of an expert's opinion, but dealt instead with a chemist's report and worksheet which the prosecution attempted to authenticate through a witness who had no connection with either the documents or the person who prepared them.

(citations omitted). *Reardon,* 806 F.2d at 42. Given that *Reardon* did not involve the admissibility of documents or the applicability of the Rules of Evidence, *Reardon* has no authoritative value for purposes of *Oates* or for purposes of determining the admissibility of the reports in the instant case.[16]

We find the State's Motion for Rehearing without merit. The judgment of the court of appeals is reversed and this cause is remanded to that court for a harm analysis consistent with our original opinion and with this opinion, pursuant to TEX. R.APP.P. 81(b)(2).

BENAVIDES, J., not participating.

MALONEY, Justice, concurring.

While I agree with and therefore join the majority opinion, I disagree with the majority's failure to address the point raised in the State Prosecuting Attorney's Motion for Rehearing concerning Criminal Rules of Evidence 703 and 705 and ultimately its failure to reach the issue of admissibility of the chemist's testimony.[1] By failing to ad-

---

15. Although the court discussed the troublesome factors again when briefly addressing appellant's confrontation clause claim, it stressed that "we do not decide whether appellant's right to confrontation has been violated here." *Oates,* 560 F.2d at 80.

16. The State Prosecuting Attorney in its Motion for Rehearing urges us to consider the admissibility of the testimony of the supervising chemist under Texas Rules of Criminal Evidence 703 and 705. Because this argument was not raised in the Court of Appeals nor on original Petition for Discretionary Review, we decline to address this issue. *Compare Boyle v. State,* 820 S.W.2d 122, 141 (Tex.Cr.App.1989) (op. on motion for reh'g).

1. Contrary to the majority's opinion, I believe the issue of the chemist's testimony is properly before this Court. At trial, appellant objected to admissibility of both the subject reports and the supervising chemist's testimony as to findings set forth in the subject reports. The holding of the Court of Appeals was primarily framed in terms of admissibility of the testimony. In his petition for discretionary review on original submission, appellant did not clearly differentiate between admissibility of the report and admissibility of the testimony, but claimed that "the trial court erred in admitting hearsay evidence concerning the results of chemical tests performed by an absent Department of Public Safety chemist". I believe that the holding in our original opinion and in the majority's opin-

dress the admissibility of the chemist's testimony, apart from the admissibility of the reports, the majority leaves the wrong impression, that at no time may a supervising chemist or any expert testify as to tests conducted by a subordinate.

The State Prosecuting Attorney argues that pursuant to Texas Rules of Criminal Evidence 703 and 705, Thomas could testify as an expert "as to the results of the test[s] in question based upon the chemist's reports, and then could reveal the findings in those reports as the facts or data underlying his opinion". The State Prosecuting Attorney concludes that our original opinion failed to "consider the obvious admissibility of the report in issue pursuant to the rules governing expert testimony." The State Prosecuting Attorney's contentions disregard the fact that Thomas' testimony concerning the findings contained in the reports was hearsay and was not offered for the specific purpose of disclosing the underlying basis of his expert opinion pursuant to Rules of Criminal Evidence 703 and 705. If the State had offered Thomas' testimony concerning the reports pursuant to Rules 703 and 705, it might have been admissible, although the State Prosecuting Attorney goes too far in concluding that the *reports* would also have been admissible pursuant to the rules on expert testimony.

An expert witness may testify as to matters that will assist the trier of fact in understanding the evidence or determining a fact in issue. *Kelly v. State*, 824 S.W.2d 568, 572 (Tex.Cr.App.1992); *Duckett v. State*, 797 S.W.2d 906, 909–10 (Tex.Cr.App. 1990); TEX.R.CRIM.EVID. 702. An expert's opinion may be based upon personal knowledge as well as facts or data presented to the expert during trial or outside of trial. Moreover, the facts or data relied upon by the expert need not be admissible in evidence. TEX.R.CRIM.EVID. 703.

At trial, Thomas testified that he was the supervising chemist at the DPS laboratory in Lubbock. He testified that only two chemists worked in the laboratory. Thomas testified that he had earned bachelor's degrees in chemistry and biology, had undergone special training at the state DPS headquarters laboratory and had worked as a chemist for the DPS for over seven years. Although Thomas testified that a subordinate chemist in the laboratory examined most of the evidence and prepared the reports, Thomas stated that he, himself, had also examined some of the evidence. Thomas testified as to matters contained in the subject reports, as to the tests run in connection with the reports, the results of those tests, and his conclusions and opinions based upon the results. Thomas also testified about other tests that were run that were not referred to in the subject reports. Appellant objected to Thomas' testimony concerning the findings contained in the reports as hearsay and as constituting a violation of the confrontation clause. The State did not offer Thomas' testimony for a specific purpose or as falling within an exception to the hearsay rule.[2] Appellant's objection was overruled and Thomas was permitted to testify concerning the findings contained in the reports.

It appears that Thomas was qualified as an expert, based upon his education and experience as a chemist-toxicologist, to give his opinion about blood, seminal fluid and hair samples taken from the victim and the victim's clothing immediately following the offense. As an expert, Thomas was permitted to testify as to relevant matters about which he had personal knowledge, TEX.R.CRIM.EVID. 402, 602, 703, and to state his opinion based upon his personal knowledge of the facts and the evidence, TEX.R.CRIM.EVID. 703. Thomas was also authorized to rely on facts or data contained in the subject reports, including the test results, in forming his own opinion as to the evidence examined, regardless of the admissibility of such facts or data.[3]

ion on rehearing are unduly limited to the admissibility of the reports and fail to address admissibility of the chemist's testimony, although that issue was adequately preserved for appeal.

**2.** Shortly before Thomas testified concerning findings contained in the reports, the State offered the reports into evidence expressly under the business records exception to the hearsay rule. Appellant objected to admission of the reports as hearsay and failing to fall within the business records or the public records exceptions to the hearsay rule.

**3.** As stated by the Second Circuit in concluding that a supervising chemist could testify about the results of tests conducted by a subordinate chemist in the toxicology laboratory of the Connecticut Department of Health:

It is rare indeed that an expert can give an opinion without relying to some extent upon

*Reardon,* 806 F.2d at 42; TEX.R.CRIM. EVID. 703. However, disclosure of the facts and data underlying an expert's opinion is another issue.

The party offering expert testimony must be able to establish a sufficient underlying basis for the expert's opinion or the opinion is inadmissible.[4] Texas Rule of Criminal Evidence 705 provides that an expert may disclose on direct examination or may be required to disclose on cross-examination facts or data underlying his opinion. TEX.R.CRIM.EVID. 705(a). Subparagraph (d) of Rule 705, which has no federal counterpart, provides, however, that facts or data which would otherwise be inadmissible shall be excluded if the court determines that "the danger that they will be used for an improper purpose outweighs their value as explanation or support for the expert's opinion."[5] TEX.R.CRIM.EVID. 705(d). One of the greatest dangers in allowing otherwise inadmissible evidence under Rule 705 is that the jury will consider the facts and data as substantive evidence rather than as merely constituting the underlying basis for the expert's opinion. For that reason it is crucial that the trial court have the opportunity to conduct the balancing test prescribed by Rule 705(d) and that a limiting instruction be given upon request. Therefore, I would hold that when otherwise inadmissible evidence is offered for the purpose of disclosing the basis of an expert's opinion pursuant to Rule of Criminal Evidence 705, the party offering the evidence must inform the court of the limited purpose for which the evidence is offered so that the court can conduct the required balancing test.

Here, the reports were offered by the State to prove the truth of the matters asserted therein, but as admissible under a hearsay exception. It appears that Thomas' testimony concerning the findings contained in the reports was also offered to prove the truth of those findings. Since the State did not inform the trial court that the testimony was offered for the specific limited purpose of disclosing the basis of Thomas' expert opinion, the trial court did not have the opportunity to conduct the required subsection (d) balancing test and give a limiting instruction, if requested. I would accordingly respond to the State Prosecuting Attorney's contentions regarding the applicability of Rules of Criminal Evidence 703 and 705 by holding that Thomas' testimony concerning the findings contained in the reports was not admissible pursuant to Rules 703 and 705, where the evidence was not offered for the limited purpose of disclosing the basis of Thomas' expert opinion.[6]

With these comments, I join the opinion of the majority.

McCORMICK, Justice, dissenting.

The end must justify the means:
He only sins who ill intends:
Since therefore 'tis to combat evil,
'Tis lawful to employ the devil.[1]

The conclusions reached by the majority today are not justified even by the convoluted means employed. The result was never contemplated at the time of the adoption of the Rules of Evidence and departs completely from the authority granted to

---

information furnished him by others. Moreover, "[i]t is quite reasonable for a chemist to review another chemist's analysis when forming an opinion as to the veracity of the latter's test results."
*Reardon,* 806 F.2d at 42 (citations omitted).

**4.** Texas Rule of Criminal Evidence 705(c) provides:
If the court determines that the expert does not have a sufficient basis for his opinion, the opinion is inadmissible unless the party offering the testimony first establishes sufficient underlying facts or data.

**5.** Rule 705(d) provides:
When the underlying facts or data would be inadmissible in evidence for any purpose other than to explain or support the expert's opinion or inference, the court shall exclude the underlying facts or data if the danger that

they will be used for an improper purpose outweighs their value as explanation or support for the expert's opinion. If the facts or data are disclosed before the jury, a limiting instruction by the court shall be given upon request.
TEX.R.CRIM.EVID. 705(d).

**6.** With respect to the State's claims that the reports were admissible pursuant to Rule 705, I note that Rule 705 is applicable to the admissibility of "facts or data" underlying an expert's opinion, not admissibility of physical evidence constituting or documents setting forth such facts or data. Contrary to the State's assertions, therefore, Rule 705 does not permit the admissibility of the reports themselves, but merely permits disclosure of facts or data contained therein, provided they satisfy the balancing test set forth in subsection (d).

**1.** Matthew Prior, *Hans Carvel.*

this Court to promulgate the Rules. More importantly, the majority must rely on one of the most criticized and rejected cases in Federal jurisprudence to reach its desired result.

The majority holds the evidence in question *inadmissible*[2] under Rule 803(8)(B) and ultimately concludes that the exclusionary provisions of Rule 803(8)(B) apply to Rule 803(6). Although it may seem extremely technical, the use of the term "inadmissible" is inappropriate when dealing with Rule 803. More appropriately, when discussing the exceptions to the hearsay rule pursuant to Rule 803, we should say that evidence is either "admissible" or "not admissible." After all, it is clear that the provisions enumerated in Rule 803 are rules of admission and not rules of exclusion, and the subsections of the rule are measures of whether the evidence is admissible. Clearly, evidence is often not admissible under one exception and admissible under another and we do not exclude the evidence just because it is not admissible under one exception.

In addressing the exact issue presented in this case, Joseph and Saltzburg[3] note:

"Finally, because Exception (8) is a rule of admissibility, not of exclusion, the question arises whether evidence not admissible under Exception (8) may be admissible under other provisions of the Rules—particularly Exceptions (5), (6) and (24). In State v. Therriault, 485 A.2d 986 (Me.1984), for example, a police laboratory report which was excluded as investigative in nature under Exception (8) was ruled admissible under Exception (6)."

For the majority to conclude that the exclusion in Exception (8) of "matters observed by ... other law enforcement personnel" applies to all other exceptions to the hearsay rule escapes logic. Had such an interpretation been intended, the exclusion would appear before the list of exceptions so as to make perfectly clear its application to all exceptions. Such is not the case and such was never intended by the drafters of the Federal Rules or our rules.

Further, the majority asserts that a reexamination of the legislative intent and history supports their conclusion. Nothing could be further from the facts. An examination of the exclusionary amendment found in Exception (8) of the Federal Rules and carried over into our rules shows the following: During floor debate in the House of Representatives on February 6, 1974, Congressman Dennis of Indiana offered the amendment, viz:

"On page 94, line 11 of the bill, after the word 'law', insert the words 'excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel'."

In explaining the purpose of the amendment, Mr. Dennis said:

"I think in a criminal case you ought to have to call *the policeman on the beat* and give the defendant the chance to cross examine him, rather than just reading *the report* into evidence. That is the purpose of this amendment." (Congressional Record—House, Feb. 6, 1974, p. 2387.)

The entire discussion of the amendment focused solely on the *officer on the beat* making his police report and it is clear that the concern was over assuring confrontation of the policeman who made the report of items he *observed* while at the scene of the crime. It was never intimated anywhere in any of the debate that the exclusion would be applied other than to public records and reports. Obviously, legislative history if reexamined disputes rather than supports the majority conclusions.

Looking more particularly at our own rules, legislative history would dictate a completely different result than that the majority reaches today. Pursuant to Chapter 685, Acts of the 69th Legislature, Regular Session (House Bill 13), the Court of Criminal Appeals was granted "full rule-making power in the promulgation of rules of evidence in the trials of criminal cases, except that its rules may not abridge, enlarge, or modify the substantive rights of a litigant." Thereafter this Court promulgated the Rules of Criminal Evidence. In doing so, we adopted the Civil Rules almost in their entirety.

As was recognized at the time of the adoption of our rules, and as had been

---

**2.** All emphasis is that of the author unless otherwise indicated.

**3.** *The Federal Rules in the States,* Gregory P. Joseph, Stephen A. Saltzburg, and the Trial Evidence Committee of the American Bar Association Section of Litigation, Vol. 2, ch. 58, p. 56 (1987).

recognized until today, Rule 803(6) was the hearsay exception embodiment of former Article 3737e, V.A.C.S. See Goode, Wellborn and Sharlot, 33 *Texas Practice, Texas Rules of Evidence: Civil and Criminal*, Section 803.11; and Wendorf, Schlueter and Barton, *Texas Rules of Evidence Manual*, 3rd ed., p. VIII–66. Under Article 3737e the evidence which the Court today holds "inadmissible" was heretofore admitted. *Kent v. State*, 374 S.W.2d 671 (Tex. Cr.App.1963), and cases there cited; *Hodge v. State*, 631 S.W.2d 754 (Tex.Cr.App.1982); and *Brooks v. State*, 642 S.W.2d 791 (Tex. Cr.App.1982).

This Court still has the authority to promulgate rules of evidence. If we are going to change a rule, then we should give the bench, bar and public the notice we are required to give under House Bill 13, supra. It cannot be justifiably argued that today's result was anticipated or intended by those who wrote the Rules, or by those of us who promulgated them.

If today's opinion is intended to combat evil, then we have certainly employed the devil in our fight. For these reasons, among others, I most vigorously dissent.[4]

WHITE, J., joins.

---

**4.** I do not find it necessary to address the application of *United States v. Oates*, 560 F.2d 45 (2nd Cir.1977), by the majority. One need only take the time to look *Oates* up in Sheppard's Citations and see how often it has been questioned, criticized, abandoned and repudiated by the clear majority of courts and legal scholars in this country examining the issue.